## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA
for the Use and Benefit of
ROSENDIN ELECTRIC, INC.,
a California corporation,

        Plaintiff,

v.                                     No. 10-CV-00805 WJ-DJS

AUSTIN COMMERCIAL CONTRACTORS,
L.P., a Delaware limited partnership,
FEDERAL INSURANCE COMPANY,
FIDELITY AND DEPOSIT COMPANY
OF MARYLAND, and TRAVELERS
CASUALTY & SURETY COMPANY OF
AMERICA,

        Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING MOTION TO COMPEL ARBITRATION and GRANTING REQUEST FOR STAY

        THIS MATTER comes before the Court upon the following motions filed by Defendants:

•     Motion to Dismiss, or Alternatively, Request for Stay and to Compel Arbitration, filed by Austin Commercial Contractors, LP., on September 27, 2010 (**Doc. 6**);

•     Motion to Stay filed on September 27, 2010 by Defendants Federal Insurance Company, Fidelity and Deposit Company of Maryland and Travelers Casualty & Surety Company of America (**Doc. 7**); and

•     Objection to and Motion to Strike Affidavit of William Eliopoulos, filed by Austin Commercial Contractors, LP., on November 3, 2010 (**Doc. 17**).

        Having considered the parties' briefs and the applicable law, I find that the motion to

compel arbitration shall be granted, and that the request for stay shall be granted.  Further, the

motion to strike shall be denied.

**Background**

This action is a complaint for breach of contract and for recovery under a payment bond brought pursuant to the Miller Act. Disputes have arisen between the parties involved in a construction project located at the Los Alamos National Laboratory in Los Alamos, New Mexico. The Court has jurisdiction over this matter under the Miller Act, 40 U.S.C. § 3131, et seq., and diversity jurisdiction under 28 U.S.C. § 1332.

The Miller Act allows suppliers of labor and materials to bring civil actions on the payment bond for any amount unpaid after they complete their contractual obligations. 40 U.S.C. § 3133(b)(1); *see U.S. ex rel. A & R Supply of Mississippi v. Travelers Cas. & Sur. Co. of America*, 265 Fed.Appx. 236, 238, 2008 WL 345529, 2 (5th Cir. 2008). The Act's purpose is to "protect those who furnish labor and material for public construction and to insure that they will be paid for the same." *Graybar Elec. Co. v. John A. Volpe Constr. Co.*, 387 F.2d 55, 58 (5th Cir.1967) (quoting *St. Paul-Mercury Indem. Co. v. United States for Use of H.C. Jones*, 238 F.2d 917, 921 (10th Cir.1957)).

According to the complaint, Austin Commercial Contractors, LP. ("ACCLP") entered into Subcontract Number 68507-001-06-CS ("Prime Contract") with the Regents of the University of California (the "Regents") for the construction of a new building commonly known as the Radiological Laboratory/Utility/Office Building at the Los Alamos National Laboratories (the "RLUOB Project"). Pursuant to 40 U.S.C. § 3131, ACCLP, as principal, and the other Defendants as joint sureties ("Surety Defendants"), executed a bond for the prompt payment of all persons supplying labor or materials used in carrying out the RLUOB Project.[1]

---

[1] The Miller Act requires recipients of certain government construction projects to obtain a performance bond and a payment bond. The Act allows suppliers of labor and materials to

In connection with ACCLP's performance of the Prime Contract, in January, 2006, ACCLP entered into a written Work Order Subcontract with Rosendin for construction and related services concerning the electrical work at the RLUOB Project. The Work Order Subcontract was entered into between Rosendin and ACCLP pursuant to a Master Subcontract Agreement the parties had entered into on or about April 21, 2003 (the Master Subcontract Agreement and the Work Order Subcontract are hereinafter referred to collectively as the "Rosendin Subcontract").

The Prime Contract between ACCLP and the Regents was subsequently assigned by the Regents to Los Alamos National Security, LLC, which assumed the Regent's obligations under the contract (the Regents and Los Alamos National Security, LLC are hereinafter jointly referred to hereinafter as "LANS").

Pursuant to the terms of the Rosendin Subcontract, Rosendin provided the required services to ACCLP until December 2009.  Early in that month, ACCLP issued a "Notice of De-Scoping-Suspension" to Rosendin requesting that Rosendin immediately cease work under the Rosendin Subcontract under direction from LANS.  LANS then entered into a subcontract with Rosendin to complete its work on the RLUOB Project.

The complaint alleges that ACCLP and the Surety Defendants have failed to pay Plaintiff in full for the work provided pursuant to the Rosendin Subcontract.  The total unpaid amount is still being calculated, but it estimated to exceed $11.5 million.

## Discussion

Defendants Austin Commercial Contractors, LP. ("ACCLP") seek dismissal of Plaintiff's

---

bring civil actions on the payment bond for any amount unpaid after they complete their contractual obligations.  *See* 40 U.S.C. § 3133(b)(1).

claims under Fed.R.Civ.P. 12(b)(3), or alternatively, an order staying the case and ordering

Rosendin to submit to arbitration.  The Surety Defendants have filed a separate motion for a stay

pending completion of arbitration between Plaintiff and ACCLP.  ACCLP also moves to strike

an Affidavit which Plaintiff has included as an exhibit to its response to ACCLP's motion to

dismiss.

**I.      Motion to Strike Eliopoulos Affidavit**

In its response to ACCLP's motion to compel arbitration, Plaintiff includes as an exhibit

the Affidavit William T. Eliopoulos, one of the attorneys (although not lead counsel) for

Plaintiff.  Doc. 13-1. The Eliopoulos Affidavit essentially states that in response to his request to

have Rosendin's claims against ACCLP mediated, ACCLP's attorneys agreed to submit all

subcontractor "pass-through claims," including Rosendin's claim, to LANS by mid-December

2009.[2]  However, Mr. Eliopoulos was informed by ACCLP's counsel that ACCLP informally

forwarded a copy of Rosendin's claim to LANS but did not formally submit the claim.  Without

formal submittal of the claim by ACCLP, LANS will not act on Rosendin's claim.

ACCLP moves to strike the Eliopoulos Affidavit on several grounds: that Mr. Eliopoulos

is testifying as a fact witness in the Affidavit, that the Affidavit is full of hearsay statements; and

that Mr. Eliopoulos' statements consist of unsupported conclusions and opinions.  In the

alternative to striking the entire Affidavit, Defendant seeks to exclude certain portions of the

Affidavit.

**A.      <u>Testimony as Fact Witness</u>**

Defendant contends that by presenting the Affidavit, Mr. Eliopoulos introduced himself

---

[2]  ACCLP will be presenting its own claim against LANS for mediation.

as a fact witness, which directly contravenes his role as counsel for Plaintiff. Rule 16-307(A) of the New Mexico Rules of Professional Conduct states that, "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness."

Plaintiff points out that Defendant is equally guilty of submitting declarations from its own counsel. Specifically, in its motion to dismiss, ACCLP attached the Affidavit of Mr. Gregory Harwell, counsel for ACCLP, which concerns the agreement between ACCLP and LANS, and which includes his opinion on the arbitration provision at issue here (Doc. 6, Ex. F). The Court could strike both parties' affidavits and be done with it. However, Plaintiffs present an argument that has merit and which adequately disposes of this issue. Rule 16-307 is not an evidentiary rule. Statements made by Mr. Eliopoulos, even as a fact witness, are not rendered inadmissible simply because Mr. Eliopoulos is also acting in the role of an attorney in this case. Rule 16-307 may have been relevant if Defendant were seeking Mr. Eliopoulos' disqualification as counsel, but Defendant is not requesting such relief. Thus, Rule 16-307 has no "teeth" with regard to whether the affidavit should be stricken as competent evidence. Thus, Defendant's motion is denied on this basis.

B.    <u>Hearsay Issues</u>

Defendant also argues that the statements in the Eliopoulos Affidavit are "replete with hearsay." Plaintiff contends that the statements are based on Mr. Eliopoulos' personal knowledge from his own communications with ACCLP's counsel, and from his own attendance at meetings concerning Rosendin's Master Subcontract Agreement and on the Prime Contract between ACCLP and LANS. Plaintiff also contends that where the statements are not based on personal knowledge, the statements are not hearsay under Fed.R.Evid. 801(d)(2) in that the statements are those of Defendant's legal counsel and as such are considered admissions of an

authorized agent of a party opponent.   The Court finds this argument to be persuasive, and overrules Defendant's objection on hearsay grounds as well.

C.      Lack of Evidentiary Support

Last, Defendant argues that the Eliopoulos Affidavit contains unsupported conclusions and opinions, particularly with regard to statements made by ACCLP's counsel, and references to November 13, 2009 pass-through "agreement" and its contents.  This argument can be summarily rejected.  First, statements made by the opposing party's counsel are excluded from the hearsay rule under Rule 801(d)(2)(D), as stated above.  Second, sufficient foundation for the pass-through agreement can be found in the e-mail attached as Exhibit B to the Eliopoulos Affidavit, memorializing the e-mail (and which is itself properly authenticated in § 3 of the Eliopoulos Affidavit).

I need not take up Defendant's other objections to specific paragraphs in the affidavit, having found that those objections would be overruled based on the Rule 801(d)(2).  Ironically, while the Court denies Defendant's motion to strike the Eliopoulos Affidavit, the affidavit will turn out to have little significance as a basis for the Court's findings on the motion to compel arbitration.

II.     **Motion to Dismiss and Compel Arbitration**

The meatier question before the Court is whether Plaintiff's attempts to recover payment for work done for ACCLP should be submitted to arbitration.  ACCLP requests that this Court dismiss Plaintiff's Amended Complaint against it and/or refer claims against ACCLP to arbitration and stay this action as against the remaining defendants.

A.      Relevant Subcontracts

The issues which the Court will address concern the various agreements between the

6

parties: the Prime Contract between ACCLP and the Regents (or LANS); and the Rosendin

Contract which consists of both the Master Subcontract Agreement and the Work Order

executed by ACCLP and Rosendin.

Defendant's motion to compel arbitration is premised on a provision in the Master

Subcontract Agreement which states in part:

> Any controversy or claim arising out of or relating to this Agreement or the
> breach thereof shall be subject to the dispute resolution procedures, if any, **set out
> in the Prime Contract.**  Should the Prime Contract contain **no specific
> requirement** for the resolution of disputes, any such controversy or claim shall
> be resolved, at Contractor's option, by arbitration pursuant to the Construction
> Industry Rules or the American Arbitration Association then prevailing, and
> judgment upon the award rendered by the Arbitrator(s) shall be entered in any
> Court having jurisdiction thereof.

Mot., Ex. B at ¶ 21 (emphasis added).   The Work Order Subcontract expressly incorporates the

terms and conditions of the Master Subcontract Agreement.  Mot., Ex. C.  Thus, the question is

whether dispute resolution procedures are set forth in the Prime Contract, and whether those

procedures include all of Plaintiff's claims.

Section 4 of the Prime Contract between ACCLP and LANS contains provisions relating

to both mediation requests and arbitration demands.  Mot., Ex. A,§ 4(e), (f) and (g); *see also*

Resp., Att. A to Ex. 1.  The paragraph entitled "Arbitration Procedures/Costs"states:

> **The Board** shall arbitrate the claim and any counterclaims in accordance with the
> **Rules of the Board**. . . . Both parties shall be afforded an opportunity to be heard
> and to present evidence in accordance with the **Rules of the Board**. . .

Mot., Ex. A, § 4(g) (emphasis added).   The "Board" means "the DOE [Department of Energy]

Board of Contract Appeals.  Mot., Ex. A, § 3(a)(1) ("Definitions").

B.     <u>Prime Contract and Dispute Resolution Procedures</u>

Plaintiff's stance is somewhat unusual.  Rosendin concedes that its claims against the

7

ACCLP in this lawsuit are governed by the Master Subcontract Agreement's arbitration provision. However, it challenges the proper forum for the arbitration process, arguing that its claims against ACCLP should be before the American Arbitration Association, and not before the Civilian Board of Contract Appeals, as Defendant contends.

Defendant's position is that dispute resolution procedures under the Prime Contract require resolution before the Civilian Board of Contract Appeals ("CBCA"). As support for this position, Defendant offers the language included in the Prime Contract's arbitration provision, which, as discussed above, provides that the DOE Board of Contract Appeals will arbitrate claims according to its rules. Defendant also offers a copy of a Memorandum of Agreement ("MOA"), dated January 3, 2007, which is an agreement between the Los Alamos Site Office of the National Nuclear Security Administration of the United States Department of Energy and the General Services Board of Contract Appeals ("GSBCA"). Mot., Ex. D. The MOA notes that the DOE Board of Contract Appeals ("Doe Board") was currently providing "mediation, arbitration, and other ADR services relating to subcontracts issued or administered by LANS. . . ." However, as of January 6, 2007, the DOE Board would pass on its responsibilities to a newly-created Civilian Board of Contract Appeals ("CBCA"). The purpose of the MOA was to ensure an "orderly transfer of the subcontract disputes process" at LANS.

Under the language of the Master Subcontract Agreement, arbitration before the American Arbitration Association is proper only if the Prime Contract contains "no specific requirement for the resolution of disputes." Thus, in order to make a viable argument that arbitration should proceed before the American Arbitration Association, Rosendin must show that the Prime Contract has no provision for a dispute resolution process. Rosendin cannot show this. The dispute resolution process is clearly enunciated in the language of the arbitration

8

provision in ¶ 21 of the Master Subcontract Agreement and § 4 of the Prime Contract.  The

Prime Contract describes the DOE Board (which has since been superseded by the CBCA under

the terms of the MOA) as the arbiter and rulemaker for the arbitration process, and the Master

Subcontract Agreement binds Plaintiff to that process.

　　　　Accordingly, I find that dispute resolution procedures are set forth in the Prime Contract,

and that the Prime Contract describes the DOE Board as the arbiter.

C.　　　Application of Dispute Resolution Procedures in Prime Contract to Plaintiff

　　　　Plaintiff also argues that, notwithstanding the existence of a provision for dispute

resolution in the Prime Contract, that provision does not apply to Rosendin because it is not a

named party to the contract.  While the Prime Contract contains a provision for dispute

resolution, there is "no specific requirement" for the resolution of disputes between ACCLP and

Rosendin – thus allowing for arbitration to proceed pursuant to the Construction Industry Rules

of the American Arbitration Association.

　　　　Defendant contends that the Master Subcontract Agreement acts as a "flow down"

provision which incorporates the provisions the terms of the Prime Contract.  *See, e.g.,U.S. ex

rel. Quality Trust, Inc. v. Cajun Contractors, Inc*., 486 F.Supp.2d 1255, 1263 -1264

(D.Kan.,2007) (flow down clauses are designed to incorporate into the subcontract those

provisions of the general contract relevant to the subcontractor's performance) (citing *United

Tunneling Enterprises, Inc. v. Havens Const. Co., Inc*., 35 F.Supp.2d 789, *794 -795 (D.Kan.,

1998)).  Flow down provisions have been upheld where they are sufficiently specific, even

where a subcontract merely incorporates the conditions of the entire prime contract by general

reference.  In *JS & H Const. Co. v. Richmond County Hospital Authority*, the Fifth Circuit held

that a subcontractor was subject to a provision in the prime contract requiring arbitration of

contract disputes.  The provision in a subcontract incorporated by reference the "general conditions" of prime contract and explicitly provided that the subcontractor assumed toward the prime contractor those responsibilities and obligations which the prime contractor assumed toward the hospital authority in the prime contract.  473 F.2d 212 (5th Cir. 1973).[3]

Thus, the Prime Contract need not specifically name Rosendin in order to bind Rosendin to its dispute resolution process.  Paragraph 21 of the arbitration provision in the Master Subcontract Agreement is not a global adoption of all Prime Contract terms; it is an explicit and specific incorporation of the dispute resolution procedures set out in the Prime Contract between ACCLP and LANS.

Plaintiff's real objection to the forum is related to the delay Rosendin has experienced in trying to get its claims formally submitted for a timely arbitration.  According to the Eliopoulos Affidavit, Rosendin blames ACCLP for the delay, claiming that ACCLP is holding Rosendin's claims hostage so that its own claims gain an advantage in front of the arbiter.  The reason given by Defendant for the delay is that Judge Pollack, the CBCA judge presiding over ACCLP's claims against LANS, has determined that claims coming from ACCLP's subcontractors would not be added to the proceeding.  Reply, Ex. B.  Thus, it is not at all clear whether the delay can

---

[3] *See also Plum Creek Wastewater Authority v. Aqua-Aerobic Sys., Inc.*, 597 F.Supp.2d 1228, 1233-34 (D.Colo. 2009) (holding that subcontract's flow down provision binding the subcontractor "to the applicable terms and conditions" of the prime contract required enforcement of a forum selection provision found in the prime contract); *cmp. Fanderlik-Locke Co. v. U.S. for Use of Morgan*, 285 F.2d 939 (10th Cir. 1960) (flow down provision requiring subcontractor to furnish labor and material "in accordance with the general conditions of the contract between the owner and the contractor" was not specific enough to incorporate the disputes provision of the prime contract into the subcontract).

be blamed on ACCLP. [4]

The Court is sympathetic to Plaintiff's plight in that its attempts to expedite the mediation or arbitration of its claims against ACCLP have been unsuccessful for over a year. However, the timeliness of the arbitration process is not before the Court, nor would it be appropriate for the Court to make any findings on that issue. The reasons for the purported hold-up in presenting Plaintiff's claims for mediation are disputed, and it would require considerable discovery and litigation in order to get to the bottom of the situation. More importantly, Plaintiff cannot use this issue to circumvent the plain language of the contract which binds Rosendin to arbitration before the CBCA. I agree with Defendant that this is a procedural issue which should be left to CBCA to decide.

## III.    Whether Dismissal is Appropriate

ACCLP requests that the Court dismiss Plaintiff's claims against ACCLP in favor or arbitration, or in the alternative, that the Court compel arbitration of all of Plaintiff's claims and stay the claims against ACCLP and the claims against the remaining Defendants. Defendant ACCLP does not offer a legal basis as to why one alternative is more preferable. The Surety Defendants seek a stay, but not dismissal, and note that they are entitled to a stay under the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 2.

The FAA requires that a court stay judicial proceedings instead of dismissing a case when one of the parties requests a stay. *Adair Bus Sales, Inc v. Blue Bird Corp*., 25 F.3d 953, 955 (10th Cir. 1994). However, there is some authority that supports dismissal of a case

---

[4] The Court has denied Defendant's motion to strike the Eliopoulos Affidavit, yet does not find any of Mr. Eliopoulos' statements to be dispositive to the issue of whether arbitration should be compelled.

involving arbitrable claims when all of the issues raised in the district court must be submitted to arbitration. *See, Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 179 (3rd Cir. 1998)(overruled on other grounds, *Green Tree Financial Corp.- Alabama v. Randolph*, 531 U.S. 79 (2000))). (plaintiff entitled under the FAA to a stay of court proceeding pending arbitration on claim that plaintiff has agreed to arbitrate, but if all the claims involved in an action are arbitrable, a court may dismiss the action instead of staying it). Plaintiff's claims in this lawsuit which are asserted against ACCLP are subject to arbitration, but it is unknown whether Plaintiff's claim against the Surety Defendants on the payment bonds are also arbitrable. Thus, a stay is appropriate pending the resolution of the arbitration of Plaintiff's claims against ACCLP.

## Conclusion

I find and conclude that Plaintiff is bound by the arbitration procedures set forth in the Master Subcontract Agreement and the Prime Contract, and that those procedures specify CBCA, which supersedes the DOE Board, as the arbitration forum.

I also find and conclude that this case shall be stayed pending the resolution of the arbitration of Plaintiff's claims against ACCLP.

**THEREFORE,**

**IT IS ORDERED** that the Motion to Dismiss, or Alternatively, Request for Stay and to Compel Arbitration filed by Austin Commercial Contractors, LP. **(Doc. 6)** is hereby GRANTED in that Plaintiff is hereby required to submit to arbitration its claims against ACCLP and in that Defendant's request for a stay is GRANTED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that the Motion to Stay filed by Defendants Federal Insurance Company, Fidelity and Deposit Company of Maryland and Travelers Casualty &

12

Surety Company of America **(Doc. 7)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that the Objection to and Motion to Strike Affidavit of William Eliopoulos, filed by Austin Commercial Contractors, LP **(Doc. 17)** is hereby DENIED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that a STAY is hereby ENTERED in this case pending the resolution of the arbitration of Plaintiff's claims against ACCLP;

**IT IS FINALLY ORDERED** that counsel for Plaintiff shall advise the Court by formal pleading of the resolution of that arbitration, at which time the Court will lift the stay.

_____
UNITED STATES DISTRICT JUDGE

13